M. M. BRIEN *vs.* H. W. BUTTORFF and others.

October Term, 1875.

DEMURRER MUST GO TO THE RELIEF SOUGHT.—A demurrer must be founded on some dry point of law which goes to the relief sought; and, therefore, several demurrers will not lie to separate parts of the bill, no one of which parts constitutes by itself the equity of the bill, or is the basis of the whole relief sought, or of any particular relief sought.

*M. M. Brien*, for self.
*Ed. Baxter*, for defendants.

THE CHANCELLOR:—On demurrer. The facts disclosed by the bill are these: The defendants, as mechanics, furnished materials and performed work in the erection, in 1867, of a costly house in Nashville, for one M. A. Parrish, and thereby acquired, severally, liens on the house and the lot

on which it was erected for the amount of their several accounts. One of them, defendant Buttorff, employed complainant, as a solicitor, to enforce his debt, and early in 1868 complainant filed a bill in this court, in the name of Buttorff, for this purpose, and on the 21st of December, 1869, recovered a decree for $2,580.05, and for a sale of the lot, in satisfaction thereof, for cash. Parrish appealed from this decree to the supreme court, where the same was affirmed. In the meantime, on the 13th of May, 1868, Buttorff sold and conveyed his claim, together with the lien, to complainant, agreeing, however, in writing, to continue to prosecute the claim in his own name for the use of complainant, and also to pay complainant's counsel fees. The transfer and agreement were in writing.

The other defendants also filed separate bills to enforce their liens as mechanics, and obtained decrees in which the same realty was ordered to be sold for cash. After the affirmance of Buttorff's decree in the supreme court, the other defendants joined in a bill against him to prevent him from selling the property for cash, to have the same sold on time, and the proceeds divided. Such proceedings were had in this suit that a decree was rendered in accordance with the prayer of the bill, and Buttorff appealed. The cases being all in the supreme court, a compromise was agreed upon between the defendants by which the property was to be sold on a credit of six months, and bid in by the defendant Haney, who was to bid enough to cover all the lien debts. The defendants had notice that Buttorff's claim and lien had been transferred to complainant, and it was agreed by them that this claim, with interest, was to be first paid. This agreement was entered into in writing by the defendants without consulting complainant. Accordingly, on the 3d of January, 1874, the property was sold, under the decree made by consent, and bid off by Haney, for $17,750, a sum sufficient to cover the lien debts. The purchaser executed his note, with the other defendants as sureties, and the sale was confirmed, the amount due to

Buttorff, as fixed by decree of December 6th, 1874, confirming the sale, was $3,347.61. Thereupon the said defendants further agreed to take said property as tenants in common, each to be interested to the amount of his debt, and a decree to this effect was entered in the supreme court by consent. Buttorff, as the nominal party of record, took the responsibility to control the suit and compromise the same. The defendants, having knowledge of complainant's rights, thus combined to defraud him and deprive him of his debt. The bill adds, however, "that defendants all recognize the justness of his claim, and their agreement to pay it, and still promise to pay it, but up to this time have wholly failed."

The substance of this bill is that complainant, after the institution of Buttorff's suit, became the owner of Buttorff's claim, which was to be prosecuted for his benefit, Buttorff, in addition, paying complainant's fees ; that Buttorff, pending the litigation, as the party of record, undertook to control the suit, and entered into a compromise by which he became joint owner of the property by virtue of his claim, the other defendants not only having full notice of the complainant's rights, but, in view of these rights, agreeing among themselves that this claim should be first paid, and still promise to pay it. The gravamen of this bill is that complainant has a lien on the land for his debt, the decree assigned, of which he cannot be deprived by the combination between the defendants, and for his debt and fee by the agreement of the parties.

That the assignment of Buttorff's claim to Brien gave the latter a right to the debt and lien for its security, of which he could not be deprived by Buttorff himself, nor by any person acting in collusion with Buttorff and with knowledge of the assignment, is too clear for argument. *Cowan* v. *Shields*, 1 Tenn. 314 ; *Pritchard* v. *Langher*, 2 Vern. 197. If Buttorff himself, by reason of being the party of record, had sunk the debt in the purchase of the property, no one would contend that he could take the prop-

erty free from the lien as between him and the complain-ant, his assignee. A purchase in conjunction with others who had notice of the assignment could confer no better right. The fact that the co-purchasers had also liens upon the property would not alter the case. The complainant, as assignee, would still be entitled to the enforcement of his lien by a sale of the property. His right would not be restricted to a sale of Buttorff's interest under the collusive agreement, for that would be to give the colluding parties the full benefit which they expected to derive from the transaction. He has a right to sell the whole property, precisely as if no such agreement had been entered into. If it bring enough to pay all the lien debts, complainant secures his debt. If it bring less, he takes his *pro rata* only of the purchase money. The bill charges, in addition, that the defendants, in view of the premises, " agreed among themselves that this (his) claim should be first paid." By this I understand, although the language is vague, not that they agreed to pay his claim in such way as to create a personal liability, upon which they might be sued at law, but to pay it out of the proceeds of the re-sale of the land. The complainant's claim, in this connection, embraces, not merely the original lien debt, but his compensation for pro-fessional services. This is not positively asserted, and may not be so in fact, but the allegations of the bill raise an equity, which, although defectively stated, is sufficient to withstand a general demurrer, though not, perhaps, a special demurrer directed to the specific defect. *Love* v. *Allison*. 2 Tenn. Ch. 111.

There is, therefore, clear equity on the face of the bill, 1st, to enforce a specific lien of which the complainant has been deprived by collusion between the defendants; 2d, a lien created by the agreement of the defendants in view of their own wrong, and which lien includes *prima facie* the claim for professional services. It is obvious that any demurrer, either to the whole bill or any specific part of it, which does not meet these equities is not well taken.

The demurrers are to specific parts of the bill, but the assignments do not in any single instance cover either of these equities. No one of them, therefore, touches the real merits of the case, and all of them combined, like an addition of cyphers, amount to nothing, and would be ineffectual if they were quadrupled in number.

The defendant Buttorff has filed three demurrers to separate parts of the bill, and the other defendants five demurrers to separate parts of the bill. It is obvious that the bill must be very exceptional which would authorize such a number of demurrers to its distinctive parts. It is equally obvious that, if a bill could be chopped up into paragraphs for the purpose of allowing a separate demurrer to each paragraph, the simplicity of equity pleading would be at an end.

The object of allowing a demurrer at all is to save costs and bring litigation to a speedy close. The ground of a general demurrer to the whole or any part of the bill must be a short point, upon which it is plain the bill would be dismissed with costs at the hearing. *Brooke* v. *Hewitt*, 3 Ves. 253. It must be founded on some dry point of law which goes to the absolute denial of the relief sought ( *Verplank* v. *Caines*, 1 Johns. Ch. 57), and, of course, to the merits. *Roberdeau* v. *Rous*, 1 Atk. 544. The defence must go, it will be noticed, to the relief sought, and no demurrer is efficacious which does not go to the relief, unless the cause assigned to a specific part of the bill applies exclusively to that part, without looking outside of it to the general purpose of the bill. *Crouch* v. *Hickin*, 1 Keen, 389. Such special demurrers must, necessarily, be very rare. Any demurrer, consequently, which is directed to part of a bill for causes which affect the relief prayed, must, as a general rule, cover the whole relief. If, indeed, the demurrer goes to the whole of that part of a bill on which specific relief is sought, it would be good. But a demurrer to a single clause of a bill, which is itself only a link in the general chain of such part, would be bad. The

reason is that the court cannot be required to take up the bill by piecemeal and examine each paragraph in all its bearings to see whether it may play any, and what, part in the final battle. *Western Ins. Co.* v. *Eagle Fire Ins. Co.*, 1 Paige, 284. The cause or reason for such a demurrer must be limited to the clause itself, and not require the court to look outside of it. The demurrer would, otherwise, become a source of delay and expense, instead of answering its proper ends. The court would, moreover, almost always in such cases find itself in the position of Lord Hardwicke, in *Brownsword* v. *Edwards*, 2 Ves. 247, when he declared that he would not determine a doubtful question upon a legal title on demurrer, but would, notwithstanding the inclination of his opinion in favor of the defendant, overrule the demurrer without prejudice to the defendant's insisting upon the same matters by way of answer, so that it might more fully come before the court at the hearing. This exception to the usual course upon demurrers, which has been followed ever since, would become the rule if the practice pursued in this case were generally adopted. *Cochrane* v. *Willis*, 4 De G. J. & S. 229.

The demurrers in this case are amenable to these general objections, and might be disallowed in the lump. No one of them is addressed to, or covers, the relief sought. It will be found, however, that each is defective in itself.

The first demurrer of Buttorff is to so much of the bill as claims that complainant has a lien upon the property for the debt of $3,347.61, and for his fee as counsel, because the bill shows that said debt was fully satisfied by the sale and purchase in the supreme court, and complainant having failed to assert his lien in that court, he cannot enforce it in this or any other court. But, if the cause assigned were true, it would not affect the equity of the bill, which is that the complainant has a lien, not only by reason of the debt, notwithstanding such satisfaction, but by the agreement and express promise of the defendants. The cause assigned is, however, obviously not true, either as a fact or as an

inference of law. For the debt was not satisfied by a collusive release of the creditor, as the party of record, after the assignment to the complainant; and the complainant, not being a party to the record, could not assert his rights in the supreme court, and is not, therefore, estopped by not doing what he could not possibly do.

The second demurrer is to so much of the bill as charges the defendants with combining, depriving, and defrauding complainant of his lien debt, because the bill shows that defendant in good faith agreed to join in the purchase to save the debt. The fact, if true, would be no answer to the complainant's equity; for the defendant had sold the claim, and could not, in equity, " join in a purchase to save it." The bill, however, shows no such fact, and the demurrer is, therefore, a speaking demurrer. *Edsell* v. *Buchanan,* 2 Ves. jr. 83.

The third demurrer is to so much of the bill as charges that defendant recognizes his agreement to pay complainant's debt, and promises to pay it, and asks for a personal decree against defendant, because the remedy is at law. But a right of action at law upon a demand as legal is no defence to that demand when brought into the court of chancery as the basis of enforcing a lien for its security. The statement of the debt would, in this view, be mere matter of inducement, which could not be demurred to. Moreover, the existence of the lien, and the right to enforce it, carries with them the incidental right to a personal judgment or decree to be personally enforced after the lien is exhausted. If the major right exist, a demurrer to the incidental right will not lie.

The demurrers of the other defendants are no better. The first is the same as the first demurrer of Buttorff, assigning, however, the additional cause, that Buttorff was authorized to consent to the decree under which the sale and purchase were made. The assignment does not say that he was authorized by complainant, and any other authority was of no avail. Besides, if the assignment is to

34

be construed as implying that the complainant authorized the act, the fact does not appear on the face of the bill, and the demurrer is a speaking demurrer.

The second demurrer is to so much of the bill as claims a lien upon the property for the complainant's fee, because the fee is no charge against defendants, and could not be a lien on their interest in the property. Besides, adds the demurrer, the debt of Buttorff having been satisfied by the purchase, and no steps having been taken by complainant to assert his right in the supreme court, he cannot assert it in this or any other court. But the lien which a counsel acquires on property in litigation by the performance of professional services need not be enforced in the suit itself, and could not have been, as against adults, in the supreme court. Such a lien is enforceable in this court, no matter in what court the services were rendered. Besides, the lien for the fee in this case is based also upon the agreement and promise of the defendants, and may be enforced, if it exist, although the defendants be not personally liable.

The third demurrer is to one of the clauses of the bill charging combination to defraud complainant, and, if sustained, would do the defendants no good. For the other clauses charging combination, and the statement of facts on which the charge is based, would still remain. The cause assigned, that the "means" by which the combination is charged show that the debt was paid by the purchase of the property, is, as we have seen, untenable.

The fourth demurrer is to so much of the bill as charges that the defendants recognize their agreement to pay complainant's debt and promise to pay it, because it shows a clear remedy at law. The defect is the same as has already been pointed out, that a remedy at law is no answer where the legal demand is the basis of a remedy only enforceable in equity, and that a demurrer is necessarily defective which does not reach the equitable right.

The fifth demurrer is substantially the same, and is, of course, equally defective.

Not one of these demurrers touches the real equities of the bill, nor assigns a sufficient cause to affect the specific part of the bill demurred to. They must, therefore, be overruled.